## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------

SHIVA STEIN,                          :

                                     :

          Plaintiff,               :   Case No. _____

                                     :

v.                               :   **JURY TRIAL DEMANDED**

                                     :

GLOBAL BRASS AND COPPER     :

HOLDINGS, INC., VICKI L. AVRIL,   :

DONALD L. MARSH, JR., BRADFORD T.  :

RAY, JOHN H. WALKER, JOHN J. WASZ, :

MARTIN E. WELCH, III, and RONALD C. :

WHITAKER,                     :

                                     :

          Defendants.           :

-------------------------------------------------------------

## COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
## OF THE SECURITIES EXCHANGE ACT OF 1934

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Global Brass, Inc. ("Global Brass or the "Company") and the members Global Brass's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Global Brass by Wieland-Werke Aktiengesellschaftand and its affiliates ("Wieland"). Defendants have violated the above-

referenced Sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on May 10, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.

2.      The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Elephant Acquisition Corp., a wholly owned subsidiary of Wieland Holdings, Inc., which in turn is an affiliate of Wieland, will merge with and into Global Brass, with Global Brass surviving the merger as a wholly owned subsidiary of Wieland (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Global Brass common share issued and outstanding will be converted into the right to receive $44.00 in cash ("Merger Consideration").

3.      The consideration Global Brass stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company.  Defendants have now asked Global Brass's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.   Specifically, the Proxy Statement contains materially incomplete and misleading information concerning, among other things, (i) Global Brass's financial projections, relied upon by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan. The

failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Global Brass stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Global Brass's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant is incorporated in the State of Delaware and therefore in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Global Brass is incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Global Brass common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Vicki L. Avril has been a member of the Board since February 2014.

11.     Individual Defendant Donald L. Marsh, Jr. has served as a member of the Board since January 2014.

12.     Individual Defendant Bradford T. Ray has served as a member of the Board since December 2014.

13.     Individual Defendant John H. Walker ("Walker") has served as Non-Executive Chairman of the Board since March 17, 2014, following his retirement as Chief Executive Officer ("CEO") of the Company. Previously, Walker served as Executive Chairman since November 2013 and CEO and director since 2007.

14.     Individual Defendant John J. Wasz ("Wasz") was appointed as the Company's CEO on March 17, 2014, and has served as the Company's President since September 2013 and Chief Operating Officer since January 2012.

15.     Individual Defendant Martin E. Welch, III has served as a member of the Board since July 2011.

16.     Individual Defendant Ronald Whitaker served as a member of the Board since July 2011.

17.     Defendant Global Brass is incorporated in Delaware and maintains its principal offices at 475 N. Martingale Road, Suite 1050, Schaumburg, Illinois 60173.   The Company's common stock trades on the New York Stock Exchange under the symbol "BRSS."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction Undervalues Global Brass

20.     Global Brass, incorporated on October 10, 2007, is a converter, fabricator, processor and distributor of specialized non-ferrous products, including a range of sheet, strip, foil, rod, tube and fabricated metal component products. The Company operates through three segments: Olin Brass, Chase Brass and A.J. Oster. The Company processes copper and copper-alloys, and also rerolls and forms certain other metals, such as stainless steel, carbon steel and aluminum. Using processed scrap, virgin metals and other refined metals, it engages in metal melting and casting, rolling, drawing, extruding, welding and stamping to fabricate finished and semi-finished alloy products. The Company's products are used in a range of applications across markets, including the building and housing, munitions, automotive, transportation, coinage, electronics/electrical components, industrial machinery and equipment, and general consumer end markets. The Company holds production and distribution rights in North America for a lead-free brass rod product, which it sells under the Green Dot and Eco Brass brand names.

21.     On April 10, 2019, the Company and Wieland jointly announced the Proposed Transaction:

> SCHAUMBURG, IL and ULM, GERMANY / ACCESSWIRE / April 10, 2019 / Global Brass and Copper Holdings, Inc. (NYSE: BRSS) ("Global Brass and Copper" or the "Company" or "GBC") and Wieland-Werke AG ("Wieland Group") today announced that they have entered into a definitive merger agreement. Wieland is a nearly 200-year-old, family-owned global technology and service

leader in the brass and copper industry, known for customer service and innovative solutions.

Per the merger agreement, Wieland will acquire all of the outstanding shares of GBC in an all-cash transaction. GBC shareholders will receive $44.00 per share in cash representing a 27% premium to Global Brass and Copper's closing price as of April 9, 2019. The transaction is expected to close in the second half of 2019 and is subject to certain required regulatory approvals.

The transaction brings together two highly complementary companies with diverse product offerings across copper and copper alloy strip and sheet, rod, foil, wire, tube and fabricated components, serving a wide variety of industries and creates a truly unique global leader in the red metals industry ideally suited to create customer value in North America, Europe and Asia.

Additionally, both companies share a commitment to technology, R&D, and providing innovative offerings and solutions. This shared focus will enable the combined business to collaborate in unique ways with customers.

The combined business will possess a leading manufacturing, service and distribution network consisting of over 90 facilities, and will share best practices to enhance all aspects of operational excellence and create a superior supply chain. Further, the company will be better positioned to benefit from a number of megatrends, including eMobility, connectivity, sustainability, and recycling.

Erwin Mayr, CEO of Wieland-Werke AG commented, "The combination of two companies with very complementary strengths and geographical footprints will enable us to provide long-term supply security for our increasingly global customers who need a reliable partner to enable their growth. Building on a strong strategic and cultural fit, the newly formed team will empower our customers' and employees' success, globally."

Fritz-Jürgen Heckmann, Chairman of the Supervisory Board of Wieland-Werke AG said, "This is a unique opportunity in the 200-year history of the Wieland Group as the combined company will be able to build on a legacy of leadership for long-term success with a truly global footprint that creates opportunities for customers and employees. On behalf of the Board and the owners of the Wieland Group, I am looking forward to welcoming the employees of Global Brass and Copper to the Wieland team."

John Wasz, GBC's President and Chief Executive Officer commented, "The combination of these two complementary leaders will allow us to more efficiently serve our customers now and well into the future. Equally as important, our collective dedication to safety, R&D, innovation and value creation will benefit our customers and create unique opportunities for the new organization."

John Walker, Chairman of GBC's Board of Directors said, "Today marks a historic event in GBC's history, as we join forces with this global industry leader, creating significant value for our shareholders and providing our employees with the opportunity to further advance their career development. On behalf of the Board, we are grateful for the hard work and dedication of our employees, who have enabled us to reach this exciting milestone."

\* \* \*

**Terms and Financing**

Under the terms of the merger agreement, which has been unanimously approved by the Board of Directors of Global Brass and Copper and the Supervisory Board of Wieland, Global Brass and Copper shareholders will receive $44.00 per share in cash, representing a 36% premium to Global Brass and Copper's 12-month average closing price and a 27% premium to Global Brass and Copper's closing price as of April 9, 2019.

The transaction is not subject to any financing condition; Wieland has secured appropriate financing facilities.

**Expected Closing**

The transaction, which is expected to close in the second half of 2019, is subject to the satisfaction of customary closing conditions, including customary regulatory approvals and the approval of Global Brass and Copper's shareholders.

**Advisors**

J.P. Morgan Securities LLC is serving as exclusive financial advisor to Global Brass and Copper, and Fried, Frank, Harris, Shriver & Jacobson LLP is serving as legal counsel to Global Brass and Copper.

\* \* \*

22.     The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth.  More specifically, on February 28, 2019, Global Brass announced stellar Fourth Quarter and Full Year 2018 results:

**Fourth Quarter Highlights**

- Volume of 131.1 million pounds, a 3% year-over-year increase;

- Net income increased 18% to $6.6 million and diluted earnings per common share increased 16% to $0.29;

- Adjusted EBITDA decreased 14% to $25.3 million year-over-year;

- Adjusted diluted earnings per common share increased 87% to $0.56; and

- The Company repurchased 400,000 shares of its stock for a total price of $12.6 million.

**Full Year Highlights**

- Volume of 564.6 million pounds, an increase of 11% year-over-year;
- Net income increased 14% to $58.2 million and diluted earnings per common share increased by 13% to $2.61;

- The Company generated Adjusted EBITDA of $128.5 million, a 2% decrease over the prior year which included a $7.4 million benefit from the recovery of insurance proceeds;

- Adjusted diluted earnings per common share increased 27% to $3.12; and

- The Company announces a change in its calculation of Adjusted EBITDA and Adjusted diluted earnings per share along with providing full-year guidance for 2019.

23.     Similarly, on May 2, 2019, the Company announced continuing success in its

**First Quarter of 2019:**

- Volume of 138.2 million pounds, a decrease of 3.9% year-over-year;

- Net income increased 13% to $18.0 million and diluted earnings per common share increased 15% to $0.82 per share;

- Adjusted EBITDA decreased from $32.3 million to $29.5 million year-over-year;

- Adjusted diluted earnings per common share decreased 13% to $0.66;

- The Company declares a quarterly dividend of $0.09 per share;

- The Company reaffirms 2019 full-year guidance.

24.     Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth.

25.     It is therefore imperative that Global Brass's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

26.     On May 10, 2019, Global Brass filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Financial Projections*

27.     The Proxy Statement omits material information regarding the Company's financial projections and the valuation analyses performed by J.P. Morgan, the disclosure of

which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

28.     The Proxy Statement discloses two sets of projections prepared by Global Brass management approved by the Board, the Risk Adjusted Case Forecast and the Strategic Plan Forecast (the "Projections"). The Projections were relied upon by the Company's financial advisor, J.P. Morgan, in connection with its valuation analyses performed in support of its fairness opinion.

29.     With respect to the Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBITDA, (2) EBIT, and (3) Unlevered Free Cash Flow, but fails to disclose (i) the line items used to calculate these non-GAAP measures, including stock-based compensation expense or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31.     The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32.     Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy Statement not misleading.

***Financial Analysis***

33.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the specific inputs and assumptions used to calculate the range of discount rate of 8.25% to 9.25%; (ii) the specific inputs and assumptions for applying a terminal growth rate ranging from 1.0% to 2.0%; and (iii) all line items used to calculate unlevered free cash flow.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but

failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of
the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

42.     The Individual Defendants acted as controlling persons of Global Brass within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

directors of Global Brass, and participation in and/or awareness of the Company's operations

and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy

Statement filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of Global Brass, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of Global Brass, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same.  The omitted information identified above was

reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at

issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.      In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.      By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.      Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 14, 2019

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*